UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **DOCKET NO. 19-cr-363-1** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **MARQUEL DEVON ROBINSON** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Suppress filed by defendant Marquel Devon Robinson ("Robinson") on January 23, 2020. Doc. 25. The government opposes the motion. Doc. 31. Based on our review of the memoranda filed by the parties and the evidence adduced at the hearings on March 10 and March 16, 2020, we **RECOMMENDED** that the motion be **DENIED**.

**I.**
**BACKGROUND**

Marquel Robinson was indicted by a grand jury and charged with possession with intent to distribute methamphetamine, heroin, and fentanyl. Doc. 1. The indictment alleges that on or about February 15, 2019, Marquel Robinson possessed fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine and some amount of a mixture and substance containing a detectable amount of fentanyl and heroin. *Id.* Robinson claims that the contraband was found after an unconstitutional search of 504 Commercial Street, Lake Arthur, Louisiana. Doc. 25. This search occurred pursuant to a warrant signed by Judge Ellis Daigle of the 31st Judicial District, Jefferson Davis Parish, Louisiana. Doc. 25, att. 3, p. 5. The warrant was based on the affidavit of Detective Coy Guidry of the Lake Arthur Police Department. *Id.*

On February 13, 2019, Detectives Thomas and Ledoux of the Calcasieu Anti-Drug Task Force and State Police Narcotic Detective Leblanc noticed a blue Honda Accord stopped in front of 504 Commercial Street. *Id*., p. 1. Approximately five minutes later, Detectives Guidry and Hall were advised that the blue Accord had recently left 504 Commercial Street and the detectives subsequently performed a traffic stop on the vehicle for failing to make a complete stop at a stop sign. *Id*. During the stop, Hall noticed a white powdery substance believed to be heroin smeared into the floor mat of the vehicle. *Id*., p. 2. Further search of the vehicle revealed 2 small plastic baggies with white powder residue behind the driver's seat. *Id*. Detectives then read the driver, Claude McDowell, his Miranda rights and searched his person, revealing a large amount of cash. *Id*. McDowell was transported to the Lake Arthur Police Department. *Id*. Hall questioned McDowell as to what had been in the baggies found in the vehicle, to which he responded the baggies had contained "crack" and that he smoked crack. *Id*.

Detective Guidry then prepared an affidavit in support of his application for a search warrant for 504 Commercial Street. *Id*. In this document he made the following statements:

- Detectives Thomas, Ledoux, and Leblanc observed a blue Honda Accord stopped in front of 504 Commercial Street.

- 504 Commercial Street is located next door to 502 Commercial Street.

- 502 Commercial Street is known for drug activity.

- The driver of the blue Honda Accord was found in possession of baggies containing crack cocaine, a substance on his floormats believed to be heroin, and a large amount of cash.

- The owner of 504 Commercial Street is believed to be Marquel Robinson's mother.

- Marquel Robinson is believed to be a resident of 504 Commercial Street.

- Marquel Robinson is a well-known drug dealer and documented drug abuser.

*Id.*, pp. 1-2.

Based on this affidavit, Judge Daigle signed the warrant and authorized the officers to perform a no-knock search of 504 Commercial Street, including all structures, vehicles, and other places of concealment on the premises for drugs, drug paraphernalia, and other such items listed in the warrant. *Id.*, pp. 4-5. According to the Lake Arthur Narcotics Team's narrative report, officers executed the search at 504 Commercial Street around noon on February 15, 2019. Doc. 25, att. 4, p. 7. That search uncovered approximately 176 grams of methamphetamine, 16 grams of cocaine, and 14 grams of heroin, as well as other items identified as drugs and drug paraphernalia, all located either in the residence or under the steps of the residence. *Id.*, pp. 7-8.

During the search of 504 Commercial Street, Savannah Robinson—the alleged owner of the house and defendant's mother—was arrested. *Id.*, p. 7. After the search was terminated at approximately 3:06 pm, officers transported Savannah Robinson to the Lake Arthur Police Station. *Id.*, p. 8. The defendant went to the police station and, upon arrival, officers read him his *Miranda* rights but did not arrest him. *Id*. The defendant indicated at that time that he did not wish to speak without his attorney present and left the station without being questioned. *Id.*; Doc. 60, pp. 16-17.

Approximately two hours after defendant left the station, Detective Guidry obtained an arrest warrant for the defendant. Doc. 25, att. 4, p. 8; Doc. 60 p. 17-18. Officers located the defendant sitting inside of a vehicle parked in the driveway of 504 Commercial Street, along with three other occupants of the vehicle. Doc. 25, att. 4, p. 8. Officers arrested the defendant pursuant to the warrant. *Id*. Defendant received his *Miranda* warnings again and was transported back to the Lake Arthur Police Department. *Id.*; Doc. 60, p. 9. Sometime after arriving at the police

station,[1] the defendant allegedly made a statement taking responsibility for the drugs found at his mother's house. Doc. 25, att. 4, p. 8.

Alleging that the search of 504 Commercial Street[2] was unconstitutional, the defendant filed the instant Motion to Suppress the drugs and drug paraphernalia found during the search, as well as his post-arrest statements, which he alleges were obtained in violation of *Miranda*. *Id*., att. 1, pp. 10-18. The government opposes the motion, responding that warrant was validly issued, or alternatively, that the search was proper because the officer acted on a good faith belief that the warrant was validly issued. Doc. 31, pp. 5-11. The government also argues that the defendant's post-*Miranda* statement was freely made as a "spontaneous and unsolicited admission" and therefore does not violate the principles of *Miranda*. *Id*., pp. 11-12.

This Court held an evidentiary hearing on only the issue of the defendant's post-arrest statements. Docs. 34 and 42. Detective Coy Guidry, the affiant for the search warrant and officer who arrested the defendant, testified for the government. Doc. 60, pp. 4-49. The defense called Savannah Robinson, as well as Officer Cru Delcambre and Officer Kobi Turner, two officers who assisted in the defendant's arrest and witnessed his post-arrest statements. Doc. 49. Both parties filed post-hearing briefs in support of their positions. Docs. 63 and 64.

The defendant argues that the warrant lacks a sufficient nexus between the drugs found during the traffic stop and 504 Commercial Street. Doc. 25, att. 1, pp. 11-14; Doc. 63, p. 2. As such, the defendant argues the good-faith exception to the exclusionary rule does not apply, since

---

[1] The Court notes some dispute as to the exact length of time the defendant was at the police station before making his statement. Compare Doc. 60, pp. 25-26 with Doc. 49 pp. 32-33 and p. 42. Detective Guidry did admit that it could have been over an hour. Doc. 60, p. 26.

[2] Defendant's mother testified, and defense counsel seems to argue, that the defendant does not reside at 504 Commercial Street. *See* Doc. 49, pp. 22-24; Doc. 25. If this is true, then defendant may lack standing to object to the search. *Alderman v. United States*, 394 U.S. 165, 174 (1969). In his affidavit, however, Detective Guidry maintains the belief that the defendant did reside at 504 Commercial Street and the government does not address the issue of standing. Doc. 25, att. 3, p. 2. Thus, the court will not explore the issue.

the warrant affidavit is "so lacking in indicia of probable cause" such that no officers could reasonably rely on it. Doc. 25, att. 1, pp. 11-14. If this Court finds that the good-faith exception does not apply, the defendant further argues that the warrant altogether lacks probable cause for the search. *Id*., pp. 14-15. Aside from establishing the blue Honda Accord containing narcotics was parked outside the residence, defendant maintains that the warrant does not otherwise link any criminal activity to 504 Commercial Street. *Id*., p. 15.

The defendant also argues his post-arrest confession should be suppressed on three different bases. First, he contends that the confession should be excluded as a "fruit of the poisonous tree," since it arose from the unconstitutional search. *Id*., 16. Next, he argues the post-arrest confession stemmed from improper questioning in violation of *Miranda*. *Id*., 16-18. The defendant urges that officers improperly reinitiated questioning only a few hours after the initial questioning, wherein he invoked his right to remain silent and his right to counsel. Doc. 63, pp. 3-7. In his post-hearing brief, he raises his third and final argument: that his confession was unlawfully coerced by use of intimidation and emotional manipulation, which the officers accomplished by arresting his mom and having her in a cell within earshot "crying out for her diabetic medication." *Id*., pp. 7-8.

## II.
## LAW & ANALYSIS

### A. Search of 504 Commercial Street

The Fourth Amendment protects an individual's right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *see also Wolf v. Colorado*, 338 U.S. 25, 27 (1949) (first incorporating this protection to the states through the Due Process Clause of the Fourteenth Amendment). The remedy for evidence seized by law enforcement in violation of the Fourth Amendment is the exclusion of the

unconstitutionally seized evidence at trial. *Weeks v. United States*, 232 U.S. 383, 391–92 (1914); *Mapp v. Ohio*, 367 U.S. 643, 654-655 (incorporating exclusion for Fourth Amendment violations to the states). This exclusionary remedy is not a personal constitutional right, but a remedy aimed at preventing police misconduct. *See United States v. Leon*, 468 U.S. 897, 906–907 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974) ("The rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'")). The burden generally rests on the defendant to show, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights. *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).

Where the challenge involves a search supported by a warrant, the inquiry begins with whether officers can claim shelter under their good faith reliance on that warrant, using factors set out in *Leon*, 468 U.S. at 922–923; *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). If the "good-faith exception" applies, the court will not explore the validity or sufficiency of the warrant unless the case involves a "novel question of law" within Fourth Amendment jurisprudence. *Satterwhite*, 980 F.2d at 320. Finding no novel questions of law, we therefore consider the challenge to good-faith reliance first and only address the defendant's specific challenges to the warrant if we reject the government's claim of good faith reliance.

The good-faith inquiry is generally one of "whether a reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23. In *Leon*, the Court outlined four scenarios where the good-faith exception does not apply:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render

>official belief in its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*U.S. v. Woerner*, 709 F.3d 527, 533–34 (5th Cir. 2013). The defendant argues that the present warrant affidavit is so lacking in indicia of probable cause such that the executing officers' reliance on it was unreasonable. *Id*. Affidavits such as these are known as "bare bones" affidavits. *United States v. Craig*, 861 F.3d 818, 821 (5th Cir. 1988). The Fifth Circuit has defined a bare bones affidavit as one containing "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite,* 980 F.2d at 321.

The defendant maintains that the affidavit fails to establish a nexus between the traffic stop of the blue Honda Accord and the search of 504 Commercial Street. Doc. 25, att. 1, p. 12. In particular, he contends that no reasonable officer could believe the warrant was supported by probable cause where the only link is the observation of the Accord parked outside the residence. *Id*., p. 14. The Fifth Circuit has held that "[a] nexus may be established through direct observation or through 'normal inferences as to where the articles sought would be located.'" *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003). Considerable weight is given to law enforcement inferences based on personal knowledge, training, and acquaintance with the defendant through the course of police work. *United States v. Barazza-Coral*, No. 13-315-08, 2015 WL 13376704 at *7 (W.D. La. Sep. 18, 2015); *See also Satterwhite*, 980 F.2d at 322 (referencing affiant's knowledge of defendant's previous arrests and convictions); *United States v. Restrepo*, 994 F.2d 173, 188 (5th Cir. 1993) (affidavit containing a "lengthy statement" of affiant's DEA experience and knowledge of typical business practices of drug dealers).

The affidavit submitted for the search of 504 Commercial Street successfully establishes a nexus between the traffic stop and the residence with not mere conclusory statements, but through personally observed facts, such as: (1) a vehicle that was recently parked outside of the house was found to contain illegal drugs; (2) a large amount of cash was found on the driver of the aforementioned vehicle; (3) the house was located in an area under active investigation for drug activity; (4) a well-known drug dealer is believed to reside at said house; (5) that same well-known drug dealer's mother owned the house; and (6) the training and experience of the officers revealed that a high traffic volume and short lengths of stay at a residence is indicative of narcotic distribution. *See generally* Doc. 25, att. 3. The affidavit sets forth a detailed factual narrative and provides circumstances from which the magistrate could independently determine probable cause. *Satterwhite,* 980 F.2d at 321. The affidavit is therefore not a "bare bones" affidavit and the officers could have reasonably relied on the resulting warrant. Pursuant to *Leon*, we therefore decline to address the defendant's specific challenges to probable cause.

In his supporting memorandum, the defendant relies heavily on *United States v. Brown*, wherein the court declined to apply the good-faith exception to a search of the defendant's home, reasoning in part that the affidavit failed to adequately link the defendant's residence to the evidence found during a traffic stop of his vehicle. 567 F. App'x 272, 281-283 (5th Cir. 2014) (unpublished). As an unpublished Fifth Circuit opinion issued after 1995, *Brown* does not have precedential value within this circuit and is merely persuasive authority. 5TH CIR. R. 47.5.4. We additionally find *Brown* distinguishable from the present case.

The Fifth Circuit ruled the *Brown* affidavit a "bare bones" affidavit based on not only the lack of a clear nexus between the traffic stop of the defendant's vehicle and his residence, but also on several other factors. 567 F. App'x at 281-283. The *Brown* Court concluded that the affidavit

-8-

included improper facts which the officer either knew were false or should have known were false, if not for his reckless disregard of the truth.³ *Id.* at 282. Additionally, the *Brown* affidavit relied heavily on information provided by a confidential source, failed to provide evidence on the credibility of that source, and omitted key details, such as the quantity of drugs recovered from the vehicle. *Id.*

In contrast to the *Brown* affiant, the affiant here did not, to the Court's knowledge, misrepresent any information to the issuing magistrate, nor does the defendant allege as such. *See generally* Doc. 25, att. 1; Doc. 63. Moreover, Detective Guidry's affidavit contains facts observed not by a confidential informant but by the affiant himself—as well as by Detectives Ledoux, Thomas, Leblanc, and Hall—throughout the course of their investigation. *See generally* Doc. 25, att. 3. Although information obtained from confidential informants has long been deemed acceptable in warrant affidavits when supported by other indicia of reliability, it is still inferior to facts within the affiant's personal knowledge. *See, e.g.*, *Gonzales v. Beto*, 425 F.2d 963, 968 (5th Cir. 1970). We credit the information provided in the present affidavit based on the detectives' personal knowledge and experience—particularly as it relates to this defendant's reputation, criminal history, and presumed residences. Doc. 25, att. 3. Unlike in *Brown*, the affiant here also provided specific information relating to the amount and kind of evidence seized from McDowell's vehicle and person. *Id.*, p. 2. Thus, other than an alleged lack of a clear nexus between the traffic stop and 504 Commercial Street, the other deficiencies in the warrant affidavit that were present in *Brown* are not present here. We therefore decline to apply *Brown*.

---

³ The officer seeking the warrant for search of a house relating to a drug bust asserted that Brown was on federal parole for drug-related charges, when in fact Brown was on supervised release for a weapons charge. *Brown*, 567 F. App'x at 282.

The defendant notes that in the state case against Savannah Robinson the Louisiana appellate court, citing *Brown*, held that the warrant in this matter "failed to establish a nexus between the residence at 504 Commercial Street and the drugs found in the car during the traffic stop." *State of Louisiana v. Savannah Robinson*, No. KW 20-00078, Doc. 63, att. 1. The defendant argues that this Court should follow the state court's ruling in his mother's case. Doc. 63, pp. 2-3. In dealing with federal prosecutions, a federal court need not defer to a state court's ruling on a motion to suppress. *See United States v. Fossler*, 597 F.2d 478, 481–82 (5th Cir. 1979); *See also United States v. Bedford*, 519 F.2d 650, 653 n. 3 (3d Cir. 1975) (It is a recognized principle that a federal court is not bound by a state court's interpretation of federal laws …") Rather, a federal court is to make an independent inquiry: "[t]he test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." *Elkins v. United States*, 364 U.S. 206, 224 (1960). Upon our own inquiry, we respectfully disagree with the state court's reliance on *Brown*. Moreover, as the government notes, neither party in this case was a party to the state court litigation. Doc. 64, p. 5. As the Court is unable to evaluate the evidence and arguments advanced in state court, we decline to follow the state court's opinion.

### B. *Statements Made Post-Arrest*

The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In *Miranda v. Arizona*, the Supreme Court held that police officers must warn suspects of their right to remain silent and their right to have an attorney present during a custodial interrogation before questioning can take place. 384 U.S. 436, 467-70 (1966). If a defendant does not knowingly and voluntarily waive these rights, any statements made by him in a custodial interrogation are inadmissible. *Id*. at 479. Additionally, if a suspect invokes his right to remain silent or requests an attorney after the questioning begins,

the interrogation must cease. *Id.* at 473-474. However, "[v]olunteered statements of any kind are not barred by the Fifth Amendment." *Id.* at 478. "[S]pontaneous, unprovoked statements do not violate the principles of Miranda." *United States v. Carpenter*, 611 F.2d 113, 117 (5th Cir. 1980).

When a defendant challenges the voluntariness of a statement, the government bears the burden of proving that voluntariness by a preponderance of the evidence. *United States v. Reynolds*, 367 F.3d 294, 297-98 (5th Cir. 2004) (per curiam). A statement is voluntary if, "under the totality of the circumstances, the statement is 'the product of the accused's free and rational choice.'" *Id.* at 298 (quoting *United States v. Garcia Abrego*, 141 F.3d 142, 170 (5th Cir. 1998)). A statement cannot be deemed involuntary in the absence of coercive police activity. *See Garcia Abrego*, 141 F.3d at 170 (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).

The defendant argues that his confession was unlawful because the officers re-initiated questioning only hours after his initial visit at the police station wherein he invoked his right to counsel. Doc. 63, p. 3. The government contends that his confession was a spontaneous, uncoerced admission and therefore did not violate his rights under *Miranda.* Doc. 64, p. 16.

The defendant offered his mother's testimony at the hearing which established that Mrs. Robinson was in one of the station's holding cells both times the defendant was at the station. Doc. 49, p. 11-14; 16. The defendant asserts in brief that his mother heard the police questioning the defendant when they brought him to the station after his arrest. Doc. 63, pp. 5-6. Such questioning could be a *Miranda* violation as the defendant had already invoked his right to an attorney earlier on the day of his arrest. Doc. 60, p. 27. During the hearing on March 16, 2020, however, Mrs. Robinson repeatedly indicated that the conversation that she overheard between the defendant and the officers was during the defendant's *first* visit to the station, before the defendant was placed under arrest and brought back to the station. Doc. 49, p. 20-21. It was not until his second visit—

after his arrest—that the defendant made his confession, which all three officers testified was spontaneous and unsolicited. *See* Doc. 60 p. 11; Doc. 49, pp. 31-33; 41-42.  Since Mrs. Robinson did not overhear any improper questioning during the defendant's second visit to the station, her testimony does not show that the defendant's confession was obtained in violation of *Miranda*.

The defendant alternatively argues the confession should be suppressed because it was involuntary and unlawfully coerced. Doc. 63, p. 7-8. He alleges that after officers arrested him, they placed him in a room at the police station where he could hear his mother "crying out for her diabetic medication." *Id*., p. 8. He asserts that officers used this as a form of "emotional and mental manipulation" to unlawfully coerce him into confessing. *Id.* During the hearing, however, both Officer Delcambre and Chief Turner—who were present during his confession—testified that they did not hear Mrs. Robinson crying out the second time that the defendant was in the back office at the police station. Doc. 49, p. 39; 43. This testimony is corroborated by the body-cam footage submitted into evidence.[4]

The government has established by a preponderance of the evidence that the defendant's statement was voluntary and has successfully refuted all allegations of coercive police activity or continued questioning after invocation of the defendant's right to counsel. Accordingly, there is no basis for suppressing the statement.

## III.
### CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the defendant's Motion to Suppress [doc. 25] be **DENIED**.

---

[4] In the footage of Marquel Robinson's first visit to the police station, Savannah Robinson can clearly be heard in the background repeatedly saying "hey." In the footage of Robinson's second visit, wherein he makes his confession, no cries from Savannah Robinson can be heard.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 59(b) of the Federal Rules of Criminal Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428–20 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)), *as recognized in Cruz v. Rodriguez*, __ F. App'x __, 2020 WL 6478502 (5th Cir. 2020) (unpubl.)

THUS DONE AND SIGNED in Chambers this 15th day of December, 2020.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE